ARKANSAS POWER & LIGHT COMPANY *v.* Cecil Dwayne HOOKS

87-329                                              749 S.W.2d 291

Supreme Court of Arkansas
Opinion delivered May 2, 1988

*House, Wallace & Jewell, P.A.*, by: *Philip E. Dixon*, for petitioner.

*Pulliam, Davis & Wright*, by: *Randall G. Wright*, for respondent.

DARRELL HICKMAN, Justice. We granted review of this case to consider the court of appeals' decision which indicates that misconduct of an employee leading to dismissal would not result in the denial of workers' compensation benefits. The court of appeals made the decision, on this question of first impression, in an unpublished opinion. We find after reviewing the case that it is unnecessary to reach the issue, and the Workers' Compensation Commission's decision simply should have been affirmed.

On June 13, 1982, Cecil Dwayne Hooks, an Arkansas Power and Light serviceman, suffered a fall of about 15 feet while on the job, injuring his back, neck, and legs. He returned to work for AP&L on August 3, 1982, and was assigned light duty. At that time his disability payments and payment of medical expenses ceased. It is undisputed that Hooks was fired for stealing electricity from AP&L and his dismissal was affirmed through the company's grievance procedure. He has not returned to the work force.

Hooks filed for temporary total disability benefits from the date he was fired, October 21, 1982, through the date of his back surgery, December 26, 1983. The administrative law judge found that he was entitled to benefits. The Workers' Compensation Commission found that Hooks was not totally disabled during this time and that in any event benefits should be denied because Hooks "was put out of work not because of his injury but because of his own willful conduct." The commission relied on the case of *Calvert* v. *General Motors Corp.*, 120 Mich. App. 635, 327 N.W.2d 542 (1982), for this finding. The court of appeals reversed the commission's decision, finding that Hooks was in fact disabled, and that the commission's reliance on *Calvert* was misplaced. Since we find the commission's determination that Hooks was not temporarily totally disabled should have been upheld, we need not consider the effect of his misconduct on his entitlement to benefits.

The established rule of review in workers' compensation cases is that the commission's findings must be upheld unless there is no substantial evidence to support them. *Osage Oil Company* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 86 (1985); *City of Fayetteville* v. *Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984).

Hooks was receiving the same wages he did before his injury, according to the testimony of his superior. There is every indication that he would have continued doing this light work until he was ready to return to his regular duties. His light work duties were those which a "journeyman lineman" might perform. Hooks' supervisor testified:

> He worked on a regular basis, he was on restricted duty and he was not assigned his usual . . . [w]hat we call single basket truck which is used by journeymen linemen, but instead given one of the smaller trucks about the size of a pickup truck and his work consisted of connecting meters, disconnecting meters, reading meters in and reading them out when a customer was moving or relocating. He did any work that a journeyman lineman could do from the ground, except lift, carry and stoop. He could not climb a pole.

The commission also relied on the following medical evidence in making its decision:

> The above named patient was seen in follow up today. He is now wearing a TENS unit and is obtaining some relief from the pain. The family situation has settled down somewhat. He could be returned to work on a limited basis so long as he did not do any heavy lifting, climbing, stooping or squatting. He is given a lumbosacral support which he is to wear when he is at work. He could do some limited driving so long as he works in the support. (Dr. Giller's letter to Dr. Moore 8-2-82.)

> The above named patient was seen in follow up today. He is getting some relief from his TENS unit and he is wearing a back brace. His only problem is keeping the TENS in place, especially when he drives in the truck. Driving also makes his back hurt. It is my impression that Mr. Hooks is making progress. This will be a slow process and it will take a minimum of three to four months before he begins to work back into his usual activities. Meanwhile, his same restrictions should stay in effect. (Dr. Giller—8-23-82)

> He is increasing his walking and is improving. Although he is improving the same restrictions should apply. He is not ready to return to his usual job. (Dr. Giller—10-11-82)

This last letter was written ten days before Hooks was dismissed. The commission found that Hooks was not disabled, stating:

> Temporary total disability is that period within the healing period in which the employee suffers a total incapacity to earn wages. *See Arkansas State Highway Department* v. *Breshears*, 272 Ark. 244, 613 S.W.2d 392 (1982). The testimony indicates that claimant was not totally disabled during this period . . . .

The commission is the fact-finding body in the administrative procedure of workers' compensation claims. *See Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984). On appellate review, the court is not to substitute its judgment for that of the commission regarding facts. The appellate role is only to see if there is substantial evidence to support the commission's findings. *Central Maloney, Inc.* v. *York*, 10 Ark. App. 254, 663 S.W.2d 196 (1984). It seems the court of appeals reviewed this case *de novo*, which was error.

There was substantial evidence to support the commission's findings.

Reversed.

PURTLE, J., dissents.

NEWBERN, J., concurs.

DAVID NEWBERN, Justice, concurring. The majority opinion is correct. I write only to amplify upon the note taken in the opinion that the court of appeals purported to answer a question of first impression in the law of this state by an opinion which was not designated for publication.

For a time, this court decided cases by signed opinions not designated for publication. The practice was governed by Rule 21 of the Rules of the Arkansas Supreme Court and Court of Appeals. After the court of appeals was created, the rule was changed to provide that all signed opinions of the supreme court are to be designated for publication; however, the rule retained the practice for court of appeals opinions.

Everything I have to say about appellate courts deciding cases and not publishing their opinions is contained in D.

Newbern and D. Wilson, *Rule 21: Unprecedent and the Disappearing Court*, 32 Ark. L. Rev. 37 (1978). While that article was written with respect to the practice of the supreme court, the criticisms apply equally to our court of appeals.

This case points up the need to revise our entire appellate system. By dividing appellate jurisdiction, our Rule 29 makes the court of appeals a court of last resort in, for example, contracts cases and property disputes which are cases of at least equal dignity with those being decided, in many instances, by this court. Yet the court of appeals decides those cases, for the most part in panels of three judges, often by opinions not designated for publication, and sometimes on an "accelerated civil list." *See* Per Curiam Order, 16 Ark. App. 301, 700 S.W.2d 62 (1985). In the great majority of its cases the court of appeals is a court of last resort because there is no right of appeal from that court to this one. Rule 29 6. We decline to review court of appeals decisions on the ground of suggested error. *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979).

In some instances the rule works to assure that more important cases are decided in the supreme court. More often it does not. While the supreme court is deciding a fender bender torts case with only an issue of sufficiency of the evidence and writing a signed, published opinion for seven justices en banc, three court of appeals judges may be deciding what the property or contract law of this state is to be for years to come, assuming a decision is made to publish an opinion on a question of first impression. (The unpublished opinions do not count because they cannot be cited. *See* Rule 21.4.)

I can think of no way to divide the work of the supreme court and the court of appeals by assigning categories of cases in such a way that it would not produce the kind of uneven, unfair system we now have. In my view, the answer lies in making an enlarged court of appeals the first appellate resort in all cases with the right of appeal to this court in capital crimes cases and perhaps in those interpreting the Constitution of Arkansas. Provisions for bypassing the court of appeals could perhaps be retained for cases in which that court recognizes law-making potential. As the primary appellate court, the court of appeals should be required to publish its opinions in all cases so that it can be held accountable

for them, and this court should review the court of appeals decisions for error, when asked to do so by an aggrieved party, on a discretionary basis.

JOHN I. PURTLE, Justice, dissenting. I am glad this court did not reach the question whether workers' compensation benefits should be discontinued when the employee is subsequently discharged because of misconduct. Obviously the majority would have upheld the commission's erroneous ruling had it reached the merits. Now, I hope, time will allow for proper reflection and research before this court decides such an important issue. However, even after avoiding a decision on such an important issue, the majority is still in error. The opinion in effect holds that the appellant did not have any disability at the time he was discharged. The majority appears to be laboring under the same mistaken impression of the law as was the Workers' Compensation Commission.

After a hearing before an administrative law judge, it was determined that the appellant was entitled to temporary total disability benefits from the time of his discharge until the time of his back surgery. In a split decision the commission reversed the administrative law judge's order and dismissed the claim. The commission founded its opinion on public policy. I find no authority for the commission to make such sweeping determinations of public policy. Commissioner Melvin Farrar in his dissent stated: "I find that just cause to terminate a claimant's employment is not necessarily just cause for denial of worker's compensation benefits." Commissioner Farrar was right.

In a well reasoned unanimous opinion by the Arkansas Court of Appeals, Division I, the commission was reversed and the benefits restored to the appellant. I find the unpublished opinion of the Court of Appeals to be sound in all respects.

Before continuing with a discussion of the merits of the case, I wish to point out that an employee may be temporarily totally disabled or he may be temporarily partially disabled. The fact that an employee remains able to do some type of work for some period of time, as the appellant was in this case, does not necessarily demonstrate that he is not temporarily and totally disabled. *Mountain Valley Superette* v. *Bottorff*, 4 Ark. App. 251, 629 S.W.2d 320 (1982). If, during the healing period, an

employee is unable to consistently perform remunerative labor, without pain and discomfort, he is temporarily totally disabled. *Pyles* v. *Triple F Feeds of Texas*, 270 Ark. 729, 606 S.W.2d 146 (Ark. App. 1980).

It is not the duty of the Workers' Compensation Commission, the Court of Appeals or this court to create new penalties under the law. The people, acting through the legislature, are the source of change in the law. The commission and this court have, in my opinion, attempted to amend an initiated act and change a statute by the decision in this case.

The appellant's treating physician's report of November 14, 1983, stated in part: "[That the appellant] is not able to engage in any work that would require lifting, bending, or prolonged sitting. For that reason he is most likely disabled from work." The physician's statement and the fact that the employer created a "soft" job for the appellant during the time he was unable to perform regular duties is heavy evidence that he was disabled from performing his regular duties. If the appellant was temporarily partially disabled, it was the duty of the employer to find work which the appellant could have done, or cause compensation benefits to be paid.

The main reason for this dissent is to wave a flag before the court, and the people, with the hope that we will not continue the "judicial legislating" business by creating a statutory type penalty for disabled workers who are subsequently discharged for misconduct. Adoption of such a "public policy" would obviously produce many complaints of misconduct in order to terminate the injured employee's benefits and lower the employer's rate of insurance. The people of the state of Arkansas through the legislature have spoken—employees who are injured on the job are entitled to receive disability benefits. It is not up to this court, or the Workers' Compensation Commission, to deny the rights which have been granted to injured employees. When people are entitled to benefits under the law they should receive those benefits.

An injured employee, of course, draws less compensation than he received while he was working. It's not inconceivable that a worker in such circumstances might be reduced to an income where he would have to steal a loaf of bread in order to feed his

hungry children. The fact that he stole a loaf of bread certainly doesn't remove his disabilities or restore his wages. That is the reason we have criminal law. When people violate criminal laws they should be punished.

Of course the "misconduct" may be only a violation of company policy or perhaps even "insubordination." It doesn't take much imagination to foresee trumped-up charges to simply get rid of an employee who has a lifetime disability of some type. The benefits to the employers and insurance companies would be substantial if the commission and the courts approved such tactics.

I conclude with a line from the opinion of the Court of Appeals: "We believe the question, involving as it does a matter of public policy, [is] one best resolved by the legislature." So do I.