Bill GOLDEN *v.* WESTARK COMMUNITY COLLEGE and
Public Employee Claims Division

97-846                                    969 S.W.2d 154

Supreme Court of Arkansas
Opinion delivered April 30, 1998

*Sexton Law Firm, P.A.* by: *William J. Kropp, III,* for appellant.

*Nathan C. Culp,* for appellees.

ROBERT L. BROWN, Justice. This case is before us on review from the Arkansas Court of Appeals. The Court of Appeals concluded that substantial evidence existed to support the Workers' Compensation Commission's decision of 20% permanent partial disability to appellant Bill Golden's body as a whole. *Golden v. Westark Community College,* 58 Ark. App. 209, 948 S.W.2d 108 (1997). The Court of Appeals further affirmed the Commission's determination that benefits for this disability would be offset, dollar-for-dollar, pursuant to Ark. Code Ann. § 11-9-522(f) (Repl. 1996), by any social security retirement benefits received by Golden and that § 11-9-522(f) did not violate the Equal Protection Clause of the Fourteenth Amendment. *Id.* We affirm the decision of the Commission and the Court of Appeals with respect to the 20% disability rating but reverse with respect to the constitutionality of § 11-9-522(f), which, we hold, runs counter

to the Equal Protection Clause. We remand this matter to the Commission for an order awarding benefits in accordance with this opinion.

On November 26, 1993, appellant Bill Golden was employed as a security guard by appellee Westark Community College (Westark) when he slipped on an icy ramp and suffered a compensable injury to his neck and back. Westark and its workers' compensation insurance carrier, appellee Public Employee Claims Division (PECD), accepted a 5% permanent physical impairment rating but contested the extent of Golden's permanent partial disability rating. Westark and PECD also argued that any benefits received by Golden, who was 67 years old at the time of his injury, should be offset by any retirement benefits received as provided by § 11-9-522(f). Golden, in turn, challenged the constitutionality of the offset provision.

In a hearing before the Administrative Law Judge (ALJ), Golden testified that he had neither completed high school nor achieved a General Equivalency Diploma. He testified that he had been in the army from 1943 to 1946; that he had worked as a route salesman for cigarette companies from 1948 to 1954; that he was a laborer and manager for pest-control companies from 1954 to 1985; and that he began his employment with Westark as a security guard in 1986. According to Golden, each of these jobs required physical activity such as lifting objects, crawling under buildings, climbing stairs, and prolonged periods of standing.

With respect to his employment at Westark, he explained that his primary duties were to guard and protect the property, which involved walking from building to building, and that the job had the potential for the use of physical force. Golden stated that after his fall on the ice, he promptly sought treatment from physicians and specialists and claimed that he still suffered from consistent and sharp pains from his lower back up through his neck. His treating physician assigned a permanent physical impairment rating of 5% and instructed him to avoid bending, stooping, climbing stairs, lifting objects weighing in excess of fifteen pounds, standing or walking for prolonged periods of time, and engaging in activities requiring the use of physical force.

Because of these limitations, Golden contended that Westark had effectively terminated his employment on January 10, 1995, and that his subsequent attempts to gain suitable employment were in vain.

The ALJ entered an order finding that Golden had suffered a 5% permanent physical impairment rating and a 15% permanent partial disability, or loss-of-income, rating. As a result, the ALJ awarded Golden benefits at the rate of $119 per week for twenty-two and one-half weeks for his 5% permanent physical impairment and concluded that the offset statute, § 11-9-522(f), did not apply to these benefits. With respect to the 15% permanent partial disability rating, the ALJ determined that any weekly compensation benefits would be set off, dollar-for-dollar, pursuant to § 11-9-522(f) against the $575 per month received by Golden in social security retirement benefits. Because of the offset, the ALJ concluded that Golden was not entitled to receive any benefits for his permanent partial disability.

The case was appealed to the full Workers' Compensation Commission. On August 14, 1996, the Commission, with one dissenter, determined that the term "disability," as used in the Workers' Compensation Act, included both a physical-impairment component and a loss-of-earning-capacity component. The Commission, accordingly, concluded that Golden had suffered a 20% permanent partial disability and that the entire amount of Golden's benefits should be set off, dollar for dollar, against the $575 per month award of social security retirement benefits. Hence, the Commission concluded that Golden was entitled to no award. The Commission also determined that the offset provision of § 11-9-522(f) did not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## I. Substantial Evidence of 20% Disability

We first consider the Commission's conclusion that Golden suffered a permanent partial disability of 20% to the body as a whole, with 5% representing the permanent anatomical impairment and 15% representing his loss in earning capacity. Golden contends that there was no substantial evidence to support the

Commission's determination that he *only* be awarded compensation based on a 20% permanent partial disability. Nonetheless, although he requests a higher disability rating, he does not submit a figure to this court which he deems appropriate but relies instead on this court to fix an appropriate percentage.

In reviewing appeals from the Commission, we view the evidence in the light most favorable to the Commission's decision and affirm when it is supported by substantial evidence. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997); *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996). Substantial evidence exists if reasonable minds could reach the same conclusion. *Kuhn v. Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996); *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994). This court will not reverse the Commission's decision unless fair-minded persons considering the same facts could not have reached the same conclusion. *Id.*

The Commission reached a 20% permanent partial disability rating for Golden after agreeing with the same conclusion reached by the ALJ. In examining the evidence presented, we note where Golden's treating physician, Dr. Peter Irwin, opined that Golden had suffered a 5% physical impairment rating, and the ALJ and the Commission added a 15% permanent partial disability rating for loss of income. Taking into consideration Golden's testimony about what he could do and could not do, his physical limitations, age, education, previous work experience and the opinion of his treating physician, we cannot say that substantial evidence does not support the Commission's conclusion that there was suitable employment available to him in both the private security and janitorial fields. Nor do we conclude that this conclusion is unreasonable. Were we to raise the disability rating under these facts, we would simply be substituting our finding for that of the Commission, which we will not do. *Arkansas Power & Light Co. v. Hooks*, 295 Ark. 296, 749 S.W.2d 291 (1988).

Invoking our standard of review, we hold that substantial evidence exists to sustain the Commission's determination of 20% permanent partial disability.

## II. Equal Protection Violation

Golden next argues that the Commission erred in upholding the constitutionality of Ark. Code Ann. § 11-9-522(f) (Repl. 1996), which provides:

> (1) Any permanent partial disability benefits payable to an injured worker age sixty-five (65) or older shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker received or is eligible to receive from a publicly or privately funded retirement or pension plan but not reduced by the employee's contributions to a privately funded retirement or pension plan.
>
> (2) The purpose and intent of this subsection is to prohibit workers' compensation from becoming a retirement supplement.

*Id.*[1] A similar offset statute applied to permanent total disability benefits (Ark. Code Ann. § 11-9-519(g) (Repl. 1996)), but this statute was repealed by Act 251 of 1997.

■ We initially observe that statutes are presumed constitutional and the burden of proving otherwise is placed on the party challenging the legislative enactment. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997); *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997). In the same vein, all doubts are resolved in favor of a statute's constitutionality. *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 93 (1997); *Reed v. Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994).

The question which confronts us on the front end is whether § 11-9-522(f) presents a *classification* of injured workers for equal-protection purposes, that is, whether people in the same situation are being treated differently. We focus first on the category of injured workers who are receiving both workers' compensation benefits and social security retirement benefits. Under § 11-9-522(f), it is impermissible for injured workers, age 65 or older, to receive permanent partial disability benefits and social security retirement benefits without an offset for social security benefits

---

[1] This provision has since been amended to contain a 50% reduction as opposed to a dollar-for-dollar reduction. *See* 1997 Ark. Acts. 251 § 3.

received.[2] However, as Golden makes clear, injured workers below the age of 65 can receive both workers' compensation benefits and social security retirement benefits, and the offset statute does not prevent this. Indeed, social security retirement benefits may be drawn early between the ages of 62 and 64. 42 U.S.C. § 402(a) (1994).

Golden claims that the General Assembly's use of age 65 as the cutoff for full receipt of workers' compensation benefits and social security retirement benefits was an arbitrary and capricious benchmark which was employed without any rational basis and which does not further a legitimate governmental interest. He asserts, as a consequence, that the provision was enacted in violation of his equal protection rights under both the United States and Arkansas Constitutions.[3] Westark and PECD, however, point to the fact that the General Assembly provides twin reasons for the disparate treatment under § 11-9-522(f). The stated justification for the classification under § 11-9-522(f)(2) is to prevent workers' compensation benefits from becoming a "retirement supplement." There is a further purpose set out in Ark. Code Ann. § 11-9-101(b) (Repl. 1996), that the workers' compensation system "must be returned to a state of economic viability."

■■ With regard to whether § 11-9-522(f) sets out an impermissible classification, the United States Supreme Court has stated repeatedly that age is not a suspect classification for purposes of the Equal Protection Clause. *See, e.g., Gregory v. Ashcroft*, 501 U.S. 452 (1991); *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985); *Vance v. Bradley*, 440 U.S. 93 (1979); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976). Moreover, Golden advances no fundamental right to receive full workers' compensation benefits. Thus, we analyze his equal protection claim of age-based discrimination in the payment of disability benefits using the rational-basis standard. *Id.*

---

[2] In 1996, it was also impermissible for injured workers to receive both permanent total disability benefits and social security retirement benefits without an offset under § 11-9-519(g), as it existed at that time.

[3] The Commission did not rule on whether § 11-9-522(f) violated the Equal Protection Clause of the Arkansas Constitution, although the Court of Appeals, in its review, concluded that the statute passed muster under both constitutions.

█ In deciding whether a rational basis for a classification exists, this court looks to whether the Act is reasonably related to any legitimate government object. *Hamilton v. Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994); *Arkansas Hosp. Ass'n v. Arkansas State Bd. of Pharmacy*, 297 Ark. 454, 763 S.W.2d 73 (1989). *See also Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Golden urges that there is no rational basis to support the disparate treatment under § 11-9-522(f). He relies in large part on a decision by the Colorado Supreme Court in *Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo. 1996), where that court struck down a statute on equal protection grounds that prevented employees from receiving permanent total disability benefits together with social security retirement benefits once they reached age 65 but allowed receipt of both benefits when permanent partial disability was involved.

In *Romero*, the Colorado Supreme Court summarily rejected the primary legislative justification for the classification set out in the contested statute. That justification was that the statute was enacted to prevent a double recovery in the form of both social security retirement benefits and workers' compensation benefits. In rejecting this notion, the Colorado Supreme Court took issue with the conclusion that workers' compensation benefits and retirement benefits represent duplicate benefits:

> Social security retirement benefits are provided to persons over age sixty-five regardless of injury, as long as the recipient has reached the statutory age after having been employed and having contributed to the Social Security Trust Fund. These benefits are not disability benefits, but are old-age entitlements serving the same function as pension payments. In contrast, workers' compensation benefits are provided to compensate employees who suffer work-related injuries for loss of income resulting from such injuries. Workers' compensation benefits are paid from insurance provided by employers in exchange for the employee's forbearance from suing the employer in tort. Thus, withholding workers' compensation benefits from persons age sixty-five and older because they presumably receive retirement benefits is not rationally related to the goal of preventing duplicate benefits because workers' compensation benefits do not serve the same purpose as retirement benefits.

*Id.* at 67-68 (citations omitted). We agree with the reasoning of the Colorado Supreme Court.

A second case which fits the *Romero* mold is *State v. Richardson,* 482 S.E.2d 162 (W. Va. 1996). In *Richardson,* the West Virginia Supreme Court of Appeals acknowledged the legislature's interest in preserving the fiscal viability of that state's workers' compensation system. Yet, it issued a writ of prohibition to prevent the enforcement of a West Virginia statute that reduced permanent total disability benefits under workers' compensation by one-half of the sum of social security retirement benefits received by the injured workers. The Workers' Compensation Commission had contended that the offset statute was permissible because the legislature had dual goals comparable to the goals in the instant case of (1) preserving the fiscal integrity of the workers' compensation program, and (2) elimination of duplicate benefits.

The West Virginia Supreme Court, however, deemed the duplication argument to be without a rational footing because the purposes behind the two programs were so different — additional compensation during retirement years for a life's work in the case of social security versus compensation for a workplace injury in the case of workers' compensation. The court went on to emphasize that workers' compensation benefits are a substitute for access to the courts for redress for torts and are not a welfare benefit for wage loss. Quoting from *Sasso v. Ram Property Management,* 431 So.2d 204 (Fla. App. 1983), *aff'd,* 452 So.2d 932 (1984), the court in *Richardson* further noted that because a worker age 65 or older can supplement his or her social security retirement benefits by income from gainful employment, social security benefits have evolved into a benefit more associated with advanced years than a replacement for wage loss. The West Virginia court then concluded that the lack of a commonality of purpose between the two programs sapped the contested statute of rationality. The court held that the statute violated the Equal Protection Clause of the West Virginia Constitution.

Westark and PECD cite this court to several states which have upheld the constitutionality of offset provisions comparable to § 11-9-522(f) on the basis that the provisions were rationally

related to the legitimate government purpose of foreclosing a duplication of benefits. *See, e.g., Injured Workers of Kansas v. Franklin*, 942 P.2d 591 (Kan. 1997); *Berry v. H.R. Beal & Sons*, 649 A.2d 1101 (Me. 1994); *Case of Tobin*, 675 N.E.2d 781 (Mass. 1997); *McClanathan v. Smith*, 606 P.2d 507 (Mont. 1980); *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856 (Tenn. 1996); *Harris v. State*, 843 P.2d 1056 (Wash. 1993). *See also* 9 Arthur Larson and Lex K. Larson, *Larson's Workers' Compensation Law* § 97.35(b) (1997).

The justification for this result, as explained in Professor Larson's treatise, has been that both workers' compensation benefits and social security retirement benefits are intended to substitute for a wage loss and that recipients should not recover more than what was his or her actual wage at time of injury. *Id.* § 97.10, at 18-9. According to the theory, the injured worker is experiencing only one wage loss and should receive only one wage-loss benefit. *Id.* In this connection, Westark and PECD underscore that the workers' compensation system in this state must be "returned to a state of economic viability." Ark. Code Ann. § 11-9-101(b) (Repl. 1996). They further contend that one means of accomplishing that goal is to "prohibit workers' compensation from becoming a retirement supplement." Ark. Code Ann. § 11-9-522(f)(2) (Repl. 1996).

■ Though we recognize that the states are divided on this issue, we are persuaded by the reasoning in the *Romero* and *Richardson* decisions. Furthermore, we cannot accept the premise posited by our General Assembly in the offset statute that workers' compensation benefits received by one who is age 65 or older fall into the category of a "retirement supplement." Ark. Code Ann. § 11-9-522(f). All parties agree that Bill Golden could legitimately accept social security retirement benefits after attaining age 65 and, at the same time, supplement his retirement benefits with income from work at his Westark job without any offset. Yet, illogically, Westark and PECD maintain that if Golden could no longer work due to a work-related injury, any benefits flowing from the workers' compensation program, which are meant to ease the loss in earnings, suddenly become *verboten*. Not only is the reasoning illogical, but the net effect of the statute is to work a

disincentive on those age 65 or older to seek gainful employment to supplement social security benefits. We fail to see the rationale behind this inconsistency in treatment. The effect, of course, is to weed these older workers out of the work force.

Plus, the starting points for workers' compensation and social security are so completely different. As the *Romero* decision makes abundantly clear, a work-related injury resulting in a disability such as a leg amputation with severe limitation on earning capacity calls into play drastically different policy considerations than social security which is meant to ease the financial burden during later years, whether the recipient age 65 or older is working or not. Suffice it to say that we find no logical premise for the legislative conclusion that social security retirement benefits and workers' compensation benefits are duplicative and should offset one another.

In sum, it is not the mere age-based classification that is troublesome to this court, though there is clearly disparate treatment by the General Assembly for those age 62 through 64 and those age 65 and older, but the fact that we perceive no rational basis for offsetting these two benefits irrespective of the age. To be sure, economic viability of the workers' compensation program and eradication of duplicate benefits are worthy and lofty goals, but we fail to see how workers' compensation benefits paid for loss of the ability to earn the same wages and a retirement benefit under social security are duplicative in any respect. The economic objective behind § 11-9-522(f) to save money may be reasonable but the means for achieving that particular end are not and, hence, the statute fails to withstand constitutional scrutiny.

We affirm the Commission's finding that Golden was 20% disabled. We reverse the decision of the Commission and the Court of Appeals on the constitutional point and hold that § 11-9-522(f) violates the Equal Protection Clause of the United States Constitution because the justification for the age-based classification for groups receiving both workers' compensation benefits and social security retirement benefits is not rationally related to a legitimate government purpose. Accordingly, § 11-9-522(f) is void on its face and of no effect.

Affirmed in part. Reversed in part and remanded.