731 So.2d 141 (1999)
George DIXON, Appellant/Cross-Appellee,
v.
PASADENA YACHT & COUNTRY CLUB and Alexsis, Inc., Appellees/Cross-Appellants.
No. 98-1064.
District Court of Appeal of Florida, First District.
April 27, 1999.
*142 Dana L. Greenbaum of Greenbaum & Bergman, St. Petersburg, for Appellant/Cross-Appellee.
Jeffrey S. Breslow, Miami, Amicus Curiae, for Appellant/Cross-Appellee.
G. Dennis Lynn, Jr., of Holland & Knight LLP, St. Petersburg, for Appellees/Cross-Appellants.
ERVIN, J.
Three issues are raised in this appeal and cross-appeal: (1) whether permanent total disability (PTD) supplemental benefits are a "collateral source" subject to the 100 percent cap on average weekly wage (AWW) discussed in Escambia County Sheriff's Department v. Grice, 692 So.2d 896 (Fla.1997); (2) whether social security retirement benefits are a "collateral source" subject to the 100 percent AWW cap discussed in Grice; and (3) whether it was error to award PTD supplemental benefits to claimant after he had reached age 65. We reverse the first issue based on Americana Dutch Hotel v. McWilliams, 24 Fla. L. Weekly D624 (Fla. 1st DCA Mar.3, 1999), and affirm the third, see Scott v. Mohawk Canoes, 24 Fla. L. Weekly D567 (Fla. 1st DCA Feb.18, 1999), without further discussion. As to the second issue, which is one of first impression, we conclude that social security retirement benefits are not "collateral source" benefits as contemplated in Grice, and that application of the 100 percent AWW cap and offset was error.
Claimant, George Dixon, suffered a compensable back injury on February 11, 1992, when he was 61 years old. He was determined to be permanently and totally disabled on August 13, 1993, at the age of 63, and began receiving PTD benefits. Claimant turned 64 on March 21, 1994, and thereafter began receiving social security retirement benefits.[1] By order dated February 16, 1998, he was awarded PTD supplemental benefits from March 21, 1995, his 65th birthday. Nevertheless, the total amount that he could receive from PTD, PTD supplemental and social security retirement benefits was capped at 100 percent of his AWW pursuant to Grice, thereby allowing the employer/carrier to offset the amount of social security retirement benefits claimant received.
We find no authority for an offset in regard to social security retirement benefits. Nothing in chapter 440, Florida Statutes, provides any support for such a reduction. Section 440.15(3)(b)7, Florida Statutes (1991), allows an offset against wage loss benefits paid an injured worker who also receives social security retirement benefits, but that statute is clearly inapplicable to this case, because claimant is being paid PTD and PTD supplemental benefitsnot wage loss. Our court, moreover, has narrowly construed the statute and refused to expand the deduction provided in section 440.15(3)(b)7 to any other class of benefits. See, e.g., Dental Arts Lab, Inc. v. Constantino, 531 So.2d 999 (Fla. 1st DCA 1988) (social security retirement offset is applicable only to wage loss, not temporary partial disability benefits). Consequently, we find no authority for extending the offset provided in section 440.15(3)(b)7 to PTD or PTD supplemental benefits.
Section 440.15(9)(a), Florida Statutes (1991), likewise provides no authority for this offset. This statute permits a reduction of workers' compensation benefits based on receipt of social security disability benefits. It, too, has been narrowly construed and applied. See Good Housekeeping Gas Co. v. Kitler, 492 So.2d 700 (Fla. 1st DCA 1986) (social security disability offset inapplicable where claimant was paid monthly, not weekly, and statute was keyed to weekly compensation benefit); *143 Carballo v. Warren Mfg. Co., 407 So.2d 603 (Fla. 1st DCA 1981) (statutory set-off does not include an abatement for supplemental security income benefits received by claimants). Because claimant is not receiving social security disability benefits, and, in fact, is no longer eligible for such benefits as he is over the age of 65, section 440.15(9)(a) provides no authority for the offset.
Other offsets allowed under chapter 440 based on receipt of unemployment compensation and pension disability benefits payable by a public employer, see sections 440.15(10) and (12), Florida Statutes (1991), are likewise inapposite under the circumstances of this case.
The only other conceivable statute arguably permitting the offset the employer claimed is also inapplicable. Section 440.20(15), Florida Statutes (1991), states:
When an employee is injured and the employer pays his full wages or any part thereof during the period of disability, or pays medical expenses for such employee, and the case is contested by the carrier or the carrier and employer and thereafter the carrier, either voluntarily or pursuant to an award, makes a payment of compensation or medical benefits, the employer shall be entitled to reimbursement to the extent of the compensation paid or awarded, plus medical benefits, if any, out of the first proceeds paid by the carrier in compliance with such voluntary payment or award, provided the employer furnishes satisfactory proof to the judge of compensation claims of such payment of compensation and medical benefits. Any payment by the employer over and above compensation paid or awarded and medical benefits... shall be considered a gratuity.
This statute, derived from former Industrial Relations Commission Rule 9, see Belle v. General Electric Co., 409 So.2d 182, 183 n. 1 (Fla. 1st DCA 1982), permits the employer, if it has paid full wages and/or medical benefits, to subsequently seek reimbursement from the carrier for amounts exceeding those legally due under the Workers' Compensation Law. Because the statute and predessor rule addressed reimbursement for compensation benefits, they have been consistently interpreted as applying to duplicative disability benefits. For example, in Grice, PTD benefits, social security disability benefits, and state disability retirement benefits were paid the worker; in Barragan v. City of Miami, 545 So.2d 252 (Fla.1989), workers' compensation and disability pension benefits were involved; and in Brown v. S.S. Kresge Co., 305 So.2d 191 (Fla.1974), the injured employee received sick leave pay in addition to disability benefits. We see a critical distinction between indemnity benefits, owed as a result of one's disabling condition, and social security retirement benefits, which are based on advanced years and to which one would be entitled regardless of whether he or she suffered an incapacitating injury.[2] This distinction *144 was one which we commented extensively upon in Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983), approved, 452 So.2d 932 (Fla.1984), in which we said:
Two forms of benefits are involved social security retirement benefits and workers' compensation disability benefits. "Neither has any relationship with the other; one is a state program, one is a federal program. Workmen's compensation is based upon a contractual arrangement; these social security benefits derive from old age retirement insurance." Brown, 608 P.2d at 1358 [Brown v. Goodyear Tire & Rubber Co., 227 Kan. 645, 608 P.2d 1356 (Kan.1980)] (Herd, J., dissenting)....
The common goal of all three compensating benefits [workers' compensation, unemployment, and social security retirement benefits] does not necessarily support the E/C's thesis that O.A.S.I. [old age and survivors insurance or social security retirement] benefits are primarily for the decent support of elderly workmen who have ceased to labor, and are intended to insure that persons removed from the active labor market because of advanced age will enjoy comfortable retirement years predicated upon a modest, but adequate, income earned during their active employment years. A worker, however, aged 70 or older may still be fully employed and earn the full amount of O.A.S.I benefits to which he would otherwise be entitled, if he were fully retired. See 42 U.S.C.A. § 403(f)(3) (Supp.1982). Thus, it appears to us that O.A.S.I. benefits, although intended to assist a worker in his retirement, have evolved into a benefit that is more attributable to advanced years rather than to retirement or wageloss.
Id. at 218-19 (footnotes omitted). Accord Morrow v. Amcon Concrete, Inc., 433 So.2d 1230 (Fla. 1st DCA 1983) (distinguishing setoffs for social security disability and social security retirement), approved, 452 So.2d 934 (Fla.1984). And see Industrial Claim Appeals Office of State v. Romero, 912 P.2d 62, 67-68 (Colo.1996) ("Social security retirement benefits are provided to persons over age sixty-five regardless of injury as long as the recipient has reached the statutory age after having been employed and having contributed to the Social Security Trust Fund. These benefits are not disability benefits, but are old-age entitlements serving the same function as pension payments." (citation omitted) (footnote omitted)).
Thus, we conclude that neither Grice nor the cases relied on therein constitute authority for applying an offset based on receipt of social security retirement benefits, because they do not constitute a "collateral source," as contemplated in Grice.
The legislature clearly knew how to fashion a social security retirement offset, as illustrated by its enactment of section 440.15(3)(b)7.[3] In the absence of a clear mandate by the legislature, we conclude that the JCC erred by applying the 100 percent AWW cap discussed in Grice to claimant's PTD, PTD supplemental and social security retirement benefits. Claimant is therefore entitled to receive the full amount of his social security retirement benefits, and the only ceiling on his PTD and PTD supplemental benefits is that set forth in section 440.15(1)(e)1, Florida Statutes (1991), which is the maximum weekly compensation rate in effect at the time of payment. See Americana Dutch Hotel v. McWilliams.
*145 AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.
ALLEN and DAVIS, JJ., CONCUR.
NOTES
[1] Claimant never applied for or received social security disability benefits, although there was evidence that he would have been eligible.
[2] Indeed, to permit the employer an offset for social security retirement benefits for any amount surpassing the worker's AWW ignores the fact that the employee, pursuant to the Social Security Act, typically contributes 50 percent of his or her wages to the social security retirement fund. In our judgment, were we to approve an offset for the full amount of social security retirement benefits the claimant received as the employer proposed, our decision would be an unwarranted judicial incursion into a function exclusively reserved to the legislative branch of government. In fact, a number of state legislatures have enacted laws exempting the workers' contribution from such offsets. See 4 Arthur Larson, The Law of Workmen's Compensation, § 97.41(b) (1994). Frequently the offset cannot exceed one-half of the employee's social security benefits. For example, section 440.15(3)(b)4, Florida Statutes (1979), the predecessor to section 440.(15)(3)(b)7, provided that the wage loss benefits of a worker who has reached age 62 shall be reduced by the amount of social security benefits he or she is receiving, but not more than 50 percent. See also Golden v. Westark Community Colleqe, 333 Ark. 41, 969 S.W.2d 154 (Ark. 1998) (considering Ark.Code Ann. § 11-9-522(f) (Repl.1996)); Culver v. Ace Elec., 971 P.2d 641 (Colo.1999) (discussing Colo.Rev. Stat. Ann. § 8-42-103(1)(c)(II)); Dickens v. Pizza Co., 1999 WL 112466, 974 P.2d 601 (Kan.1999) (discussing Kan. Stat. Ann. § 44-501(h) (Supp.1998)).
[3] Moreover, the legislature could look to other states that have enacted legislation involving social security retirement benefits. See, e.g., Golden v. Westark Community College, 333 Ark. 41, 969 S.W.2d 154 (Ark.1998); Culver v. Ace Elec., 971 P.2d 641 (Col.1999); Dickens v. Pizza Co., 1999 WL 112466, 974 P.2d 601 (Kan. 1999); Gregory v. North Dakota Workers Compensation Bureau, 578 N.W.2d 101 (N.D.1998).