Billy OSBORNE *v.* BEKAERT CORPORATION,
Death & Permanent Total Disability Trust Fund,
& Liberty Mutual Group

CA 06–537 245 S.W.3d 185

Court of Appeals of Arkansas
Opinion delivered December 13, 2006

*Walker, Shock, Cox & Harp, PLLC,* by: *Eddie H. Walker, Jr.,* for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP,* by: *James A. Arnold,* for appellee Bekaert Corporation.

*Judy W. Rudd,* for appellee Death & Permanent Total Disability Trust Fund.

JOHN B. ROBBINS, Judge. In this appeal, appellant Billy Osborne appeals the findings by the Commission that (1) Arkansas Code Annotated section 11-9-522(f) (Repl. 2002) is constitutional, and (2) the employer had not controverted his status as permanently totally disabled. We hold that the statute is unconstitutional. We hold that the Commission's finding on controversion is supported by substantial evidence. Thus, we reverse in part, and we affirm in part.

This case was considered on undisputed facts. Osborne was injured in a work-related accident on May 22, 2001, that caused him to lose his left leg in an above-the-knee amputation. Osborne was sixty-one-years old at the time. After receiving extensive medical care, his healing period ended exactly a year later on May 22, 2002. He was given a forty-five percent whole-body impairment rating. Benefits were consistently paid. The insurance carrier had an attorney enter an appearance in a July 1, 2002 letter, in which counsel asked that appellant be deposed prior to a determination of whether he was permanently totally disabled ("PTD"). Appellant was deposed on August 21, 2002. The employer thereafter agreed that appellant was PTD, specifically stating so in a letter dated March 2, 2004. The employer suggested that the Death and Permanent Total Disability Trust Fund ("Fund") be

made a party because the employer's liability would be capped at $75,000, for which the employer should receive a credit. The Fund thereafter asserted that its liability was limited by the terms of Ark. Code Ann. § 11-9-522(f)(1), which included a 260-week limitation on permanent total disability benefits for persons injured after age sixty. Appellant asserted that this statute was unconstitutional.

A pre-hearing conference was held in August 2004, in which appellant maintained that he was PTD or alternatively entitled to wage-loss disability benefits over and above his impairment rating. Appellant also stated his challenge to the statute at issue as an arbitrary limitation on older workers who are hurt on the job. Appellant added that he was not being paid the proper rate on his weekly compensation, which should be $410 and not $405. Appellee employer responded that it agreed appellant was PTD, and the only dispute was whether appellant was entitled to $405 or $410 per week. Appellee Fund agreed that appellant was PTD, but asserted that the statute at issue limited its liability, and further that the employer was not entitled to a credit for paying the permanent impairment rating.

A letter from the Administrative Law Judge ("ALJ") to the attorneys for appellant, the employer, and the Fund, dated October 11, 2004, stated that she understood that the parties had stipulated to appellant being PTD, that his weekly rate should be $410, and that the primary issue was the constitutionality of Ark. Code Ann. § 11-9-522(f). She asked all three attorneys to submit simultaneous briefs on the constitutionality issue for her consideration, in lieu of a hearing. Two additional issues were in fact litigated by agreement of the parties, which were whether the employer was entitled to a credit for the first $75,000 paid to the employee (a dispute between the employer and the Fund), and whether appellant's attorney was entitled to an attorney fee based upon controversion of the claim with regard to PTD status (a dispute between the employer and appellant).

In an opinion filed on April 6, 2005, the ALJ found that appellant had not rebutted the presumption of constitutionality, that the employer was entitled to the credit it sought, and that the employer had controverted appellant's entitlement to PTD because it did not stipulate to PTD until a year and a half after deposing appellant. All three parties appealed the administrative decision.

On de novo review, the Commission affirmed the finding that the employer was entitled to a $75,000 credit for benefits paid, which finding is not challenged on appeal. The Commission found that the employer had not controverted appellant's entitlement to PTD benefits. The Commission noted the stipulation prior to the submission of briefs that the employer accepted the claim for PTD after the opportunity to depose the claimant. When the claim was brought forward again for a hearing, which was later cancelled and submitted on briefs alone, the issue was not whether appellant was PTD. Because litigation was not necessary to determine appellant's status in this regard, the Commission reversed the finding that the employer controverted this portion of the claim.

The Commission was also asked to make a finding as to whether the statute, Ark. Code Ann. § 11-9-522(f) (Repl. 2002), was unconstitutional. This statute provides:

> (f)(1) Permanent total disability benefits shall be paid during the period of permanent total disability until the employee reaches the age of sixty-five (65); provided, with respect to permanent total disabilities resulting from injuries which occur after age sixty (60), regardless of the age of the employee, permanent total disability benefits are payable for a period of two hundred sixty (260) weeks.
>
> (2) The purpose and intent of this subsection is to prohibit workers' compensation from becoming a retirement supplement.

The Commission agreed with the ALJ that appellant had not demonstrated that the statute was unconstitutional. It noted that the party seeking to have a statute declared unconstitutional bears the burden of demonstrating unconstitutionality. It also remarked that an earlier version of this statute concerning permanent partial disability benefits was declared unconstitutional in *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998). Subsection (f)(1), but not (f)(2), was rewritten by the legislature in 1999. Prior to the re-writing, the statute read:

> (1) Any permanent partial disability benefits payable to an injured worker age sixty-five (65) or older shall be reduced in an amount equal to, dollar-for-dollar, the amount of benefits the injured worker received or is eligible to receive from a publicly or privately funded retirement or pension plan but not reduced by the employee's contributions to a privately funded retirement or pension plan.

(2) The purpose and intent of this subsection is to prohibit workers' compensation from becoming a retirement supplement.

Ark. Code Ann. § 11-9-522(f) (Repl. 1996).[1] The Commission recognized that our supreme court determined that this prior version violated the Equal Protection Clause of the United State Constitution. However, the Commission found that there was no similar Equal Protection issue involved in the present appeal.

We are now faced with the issues on appeal, which are: (1) whether the present form of Ark. Code Ann. § 11-9-522(f) is unconstitutional, and (2) whether there is substantial evidence to support the Commission's finding that the employer did not controvert appellant's entitlement to PTD benefits.

When the constitutionality of a statute is challenged, the Attorney General of this state must be notified and is entitled to be heard. Ark. Code Ann. § 16-111-106(b) (Repl. 2006). The purpose behind the notification to the Attorney General is to assure a "fully adversary and complete adjudication" of the constitutional issue. *Ark. Dep't of Human Servs. v. Heath*, 307 Ark. 147, 149, 817 S.W.2d 885, 886 (1991). This was not done in the present appeal, and the employer makes note of this fact. The employer also notes that it is not the proper adversarial party because its liability is unaffected with regard to this point.

We could decline to address the merits of this issue. It is generally reversible error when the Attorney General fails to receive notice of a constitutional attack on a statute. *Olmstead v. Logan*, 298 Ark. 421, 768 S.W.2d 26 (1989); *City of Little Rock v. Cash*, 277 Ark. 494, 644 S.W.2d 29 (1982), *cert. denied*, 462 U.S. 1111 (1983). This general rule has not been applied in some exceptional circumstances, which our supreme court has observed exist where all the issues have been briefed and argued by litigants who are clearly adversarial. *See Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). In this instance, the issue has been fully developed by appellant, the employer, and the Fund in their briefs to the ALJ, the Commission, and our court. Thus, we choose to address the merits.

We begin by stating our recognition that statutes are presumed to be constitutional, and the burden of proving otherwise is

---

[1] An identical statute applying a dollar-for-dollar offset for permanent total disability benefits, Ark. Code Ann. § 11-9-519(g) (Repl. 1996), was repealed by Act 251 of 1997.

on the party challenging the legislative enactment. *See Golden, supra. See also ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). All doubts are resolved in favor of a statute's constitutionality. *Foster v. Jefferson County Bd. of Election Comm'rs*, 328 Ark. 223, 944 S.W.2d 93 (1997).

Appellant argues that this statute creates an unfair cut-off of benefits, generally setting the line for ceasing PTD benefits at or near age sixty-five. We must analyze this Equal Protection Clause issue of age-based discrimination concerning disability benefits under a rational-basis standard. *See Golden, supra.* The stated purpose of Ark. Code Ann. § 11-9-522(f)(2) is "to prohibit workers' compensation from becoming a retirement supplement." Arkansas Code Annotated section 11-9-101 provides that one of the primary purposes of the workers' compensation laws is "to emphasize that the workers' compensation system in this state must be returned to a state of economic viability." These purposes are simply a restatement of the goals of avoiding duplicate payments and of curtailing the cost of workers' compensation insurance, which have been determined to be legitimate governmental concerns, so held in *Golden*.

We also must recognize that workers' compensation benefits are provided in exchange of forbearance from suing an employer in tort for an injury. *See Golden, supra.* Workers' compensation benefits are meant to ease the burden of lost earnings due to injury. *Id.* Workers' compensation benefits are not a retirement supplement. *Id.* The Fund concedes that this was the holding of our supreme court, though the Fund argues that this declaration is not well-reasoned. We are powerless to overturn a decision by our supreme court. *See Box v. State*, 348 Ark. 116, 71 S.W.2d 552 (2002).

In declaring the earlier version of the statute unconstitutional, our supreme court held that:

> [W]e cannot accept the premise posited by our General Assembly in the offset statute that workers' compensation benefits received by one who is age 65 or older fall into the category of a "retirement supplement." Ark. Code Ann. § 11-9-522(f). All parties agree that Bill Golden could legitimately accept social security retirement benefits after attaining age 65 and, at the same time, supplement his retirement benefits with income from work at his Westark job without any offset. Yet, illogically, Westark and PECD maintain that if Golden could no longer work due to a work-related injury,

any benefits flowing from the workers' compensation program, which are meant to ease the loss in earnings, suddenly become verboten. Not only is the reasoning illogical, but the net effect of the statute is to work a disincentive on those age 65 or older to seek gainful employment to supplement social security benefits. We fail to see the rationale behind this inconsistency in treatment. The effect, of course, is to weed these older workers out of the work force.

Plus, the starting points for workers' compensation and social security are so completely different. As the [*Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo. 1996)] decision makes abundantly clear, a work–related injury resulting in a disability such as a leg amputation with severe limitation on earning capacity calls into play drastically different policy considerations than social security which is meant to ease the financial burden during later years, whether the recipient age 65 or older is working or not. Suffice it to say that we find no logical premise for the legislative conclusion that social security retirement benefits and workers' compensation benefits are duplicative and should offset one another.

In sum, it is not the mere age–based classification that is troublesome to this court, though there is clearly disparate treatment by the General Assembly for those age 62 through 64 and those age 65 and older, but the fact that we perceive no rational basis for offsetting these two benefits irrespective of the age. To be sure, economic viability of the workers' compensation program and eradication of duplicate benefits are worthy and lofty goals, but we fail to see how workers' compensation benefits paid for loss of the ability to earn the same wages and a retirement benefit under social security are duplicative in any respect. The economic objective behind § 11-9-522(f) to save money may be reasonable but the means for achieving that particular end are not and, hence, the statute fails to withstand constitutional scrutiny. . . . . We reverse the decision of the Commission and the Court of Appeals on the constitutional point and hold that § 11-9-522(f) violates the Equal Protection Clause of the United States Constitution because the justification for the age–based classification for groups receiving both workers' compensation benefits and social security retirement benefits is not rationally related to a legitimate government purpose. Accordingly, § 11-9-522(f) is void on its face and of no effect.

*Golden*, 333 Ark. at 51-52, 969 S.W.2d at 154-60.

In response, the legislature rewrote this section to its present form. The re-enactment deleted the dollar-for-dollar set off, yet the goal remains the same, and there are time limitations specifically with regard to those age sixty and older, geared to halt PTD at or around age sixty-five, with PTD otherwise ceasing at age sixty-five if one is not injured after the age of sixty. This does no more to provide a rational basis than that found defective in the earlier version of the statute. It creates a ceasing point for PTD benefits so that older workers who are eligible for social security or retirement benefits are foreclosed from receiving PTD for a legitimate work-related injury. For reasons mirroring those stated by our supreme court in *Golden*, we hold that there is no rational basis for this distinction. The stated goal of avoiding retirement-benefit duplication has been squarely rejected by our supreme court. In addition, this method of preserving the economic viability of the workers' compensation system is not reasonable, which has also been decided by our supreme court. Therefore, we hold that Ark. Code Ann. § 11-9-522(f) is unconstitutional.

Appellant's other point on appeal concerns the finding that the employer did not controvert appellant's entitlement to PTD benefits, thereby eradicating the employer's liability for an attorney fee on that issue. The Commission found that the employer was entitled to investigate the claim, and it thereafter agreed and in fact stipulated that appellant was PTD, prior to a need for a hearing on the issue.

On appeal of a workers' compensation case, we view the evidence in the light most favorable to the Commission's decision and affirm that decision if it is supported by substantial evidence. *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994). Substantial evidence exists if reasonable minds could have reached the same conclusion. *Id*. The question whether a claim is controverted is one of fact. *Pickens-Bond Constr. Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21 (1979). The question before us is whether there is any substantial evidence to support the Commission's findings in respect to controversion. *Id*.

Making an employer liable for attorney's fees serves legitimate social purposes such as discouraging oppressive delay in recognition of liability, deterring arbitrary or capricious denial of claims, and insuring the ability of necessitous claimants to obtain adequate and competent legal representation. *Aluminum Co. of Am. v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976). Put another

way, the fundamental purpose of attorney's fees statutes such as Ark. Code Ann. § 11-9-715 is to place the burden of litigation expenses upon the party that made it necessary. *Cleek v. Great S. Metals*, 335 Ark. 342, 981 S.W.2d 529 (1998). However, the mere failure of the employer to pay certain benefits does not, in and of itself, amount to controversion, especially when the carrier accepts the injury as compensable and is attempting to determine the extent of the disability. *Revere Copper & Brass, Inc. v. Talley*, 7 Ark. App. 234, 647 S.W.2d 477 (1983).

■ The Commission had substantial evidence before it to conclude that the employer had not controverted appellant's status for purposes of awarding an attorney fee. Appellant was compensated for this severe injury from the date it occurred. When appellant formally requested a hearing on several matters in early 2004, the employer responded with a letter accepting that appellant was PTD, so stating on March 2, 2004, and in a pre-hearing questionnaire. The hearing was ultimately cancelled, and the weekly rate of compensation was not at issue. There was never a gap in payments owed to appellant. Considering the foregoing, we hold that substantial evidence supports the Commission's finding on this issue.

Reversed as to the constitutionality issue; affirmed as to the controversion issue.

PITTMAN, C.J., and GLADWIN, J., agree.