755 So.2d 651 (1998)
Judith ACKER, Appellant,
v.
CITY OF CLEARWATER, and City of Clearwater Risk Management, Appellees.
No. 97-2719.
District Court of Appeal of Florida, First District.
August 17, 1998.
William H. Yanger, Jr., and Christopher J. Smith of Yanger & Yanger, P.A., Tampa, for Appellant.
*652 Nancy A. Lauten and Mark E. Hungate of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellees.
Katrina D. Callaway and Edward A. Dion, General Counsel, Department of Labor & Employment Security, Tallahassee, for Amicus Curiae.
BOOTH, Judge.
This appeal arises from an order of the Judge of Compensation Claims (hereinafter JCC) determining that yearly increases in permanent total disability supplemental benefits should be included in the calculation of the disability pension offset. We reverse, but certify a question to the supreme court.
In 1986, Appellant was injured in the course and scope of her employment. In 1994, she was determined to be permanently and totally disabled. The City of Clearwater (hereinafter City) began paying Claimant permanent total disability benefits, as well as permanent total disability supplemental benefits, pursuant to section 440.15(1)(e)(1), Florida Statutes (1985). Claimant also began to receive her disability pension from the City.
The City informed Claimant that an offset would be taken, pursuant to section 440.20(15), Florida Statutes (1985). The offset was taken to the extent that the permanent total disability benefits, permanent total disability supplemental benefits, and pension disability benefits exceeded 100% of Claimant's average monthly wage. The offset was initially calculated by adding together all benefits paid, including the permanent total supplemental benefits. The City continued on a yearly basis to recalculate the offset, adding the 5% yearly increase in supplemental benefits.
Claimant challenged the City's practice of recalculating the offset every year based on the 5% increase in permanent total disability supplemental benefits. The JCC determined that the City was correct in its calculations, but noted that including the yearly increase in supplemental benefits in the offset calculation eroded the purpose of supplemental benefits.
The purpose of permanent total disability supplemental benefits is clear. The legislature intended to partially offset the effect of inflation by requiring that Employers or the Workers' Compensation Administration Trust Fund, depending on the date of accident, increase benefits being paid by 5% times the number of years since the accident. See Department of Labor and Employment Security, Div. of Workers' Comp. v. Vaughan, 411 So.2d 294, 295 (Fla. 1st DCA 1982). In Shipp v. State Workers' Comp. Trust Fund, 481 So.2d 76, 79 (Fla. 1st DCA 1986), we stated:
[T]he purpose of supplemental benefits... is to protect recipients of periodic benefits from the long-term effects of inflation that reduce the value of a fixed amount of benefits.... Supplemental benefits are intended as an incentive to continue periodic payments and avoid the potential for inflation to diminish the value of such payments.
We conclude that recalculating the offset every year, so as to include the increase in supplemental benefits, frustrates the intended purpose of supplemental benefits.
We previously addressed this issue in Hunt v. D.M. Stratton, 677 So.2d 64 (Fla. 1st DCA 1996), as follows:
We note that both the federal and state disability benefit schemes include incremental increases in benefits to account for future increases in the cost of living (federal cost-of-living adjustments and state supplemental benefits). While the existing workers' compensation supplemental benefit is considered in the initial calculation of the workers' compensation offset, the law does not contemplate a recalculation of the offset based upon any increases thereafter.
We followed the same analysis in Cruse Construction v. St. Remy, 704 So.2d 1100 (Fla. 1st DCA 1997)(holding that when calculating the federal social security offset, *653 the offset need not be recalculated every year to account for the increase in supplemental benefits).
The supreme court's decision in Escambia Co. Sheriff's Dep't v. Grice, 692 So.2d 896 (Fla.1997), also addresses the issue of workers' compensation offsets. In Grice, the supreme court held that in the absence of an express contract, an injured employee may not receive benefits from his employer and other collateral sources which, when totaled, exceed 100% of his average weekly wage. Id. at 898. We recognize that a close review of the facts in the Grice case reveals that increases in supplemental benefits appear to have been included in the yearly calculation of the offset. We note, however, that the precise issue raised in the instant case was not addressed in the Grice case.
In sum, we are bound to give effect to the intended purpose of supplemental benefits, which is to provide a cost-of-living adjustment to injured employees. Recalculating the offset so as to include the cost-of-living adjustment would certainly erode that purpose. Accordingly, we reverse the JCC's order, but certify the following question:
WHERE AN EMPLOYER TAKES A WORKERS' COMPENSATION OFFSET UNDER SECTION 440.20(15), FLORIDA STATUTES (1985), AND INITIALLY INCLUDES SUPPLEMENTAL BENEFITS PAID UNDER SECTION 440.15(1)(e)(1), FLORIDA STATUTES (1985), IS THE EMPLOYER ENTITLED TO RECALCULATE THE OFFSET BASED ON THE YEARLY 5% INCREASE IN SUPPLEMENTAL BENEFITS?
ERVIN and VAN NORTWICK, JJ., concur.