776 So.2d 932 (1999)
STATE of Florida and Department of Insurance, Division of Risk Management, Appellants,
v.
Richard HERNY, Appellee.
No. 99-180.
District Court of Appeal of Florida, First District.
October 29, 1999.
Robert C. Swain of Austin, Ley, Roe, Patsko, Swain & Diaz, PA, St. Petersburg, for Appellants.
Nancy L. Cavey, St. Petersburg, for Appellee.
WEBSTER, J.
In this workers' compensation case, the State of Florida, as the employer, seeks review of a final order determining the applicability of offsets against workers' compensation benefits based upon the claimant's receipt of in-line-of-duty disability retirement and social security disability benefits. The employer argues that the judge of compensation claims erroneously held that (1) in-line-of-duty disability retirement and social security disability offsets were limited to the initial benefit received by the claimant, excluding any cost-of-living increases; and (2) a health insurance subsidy provided to state retirees generally was not a collateral benefit which could be offset against the workers' compensation benefits to which the claimant would otherwise be entitled. We affirm. However, we also certify two questions, which we believe to be of great public importance, to the supreme court.

I.
The relevant facts are not in dispute. The claimant sustained a compensable injury on September 9, 1987. In December of 1987, the claimant began receiving monthly social security disability benefits of $674.70. On November 17, 1988, the employer began taking an offset of $674.70 against temporary benefits being paid to the claimant. On September 1, 1989, the claimant began receiving $565.31 per month in in-line-of-duty disability retirement benefits. On July 1, 1990, the claimant became eligible for his first disability retirement cost-of-living increase, and received further increases in each of the following years. The claimant also received $36.27 per month as a health insurance subsidy, which had been appropriated by the legislature to help state retirees *933 deal with increases in health insurance premiums. The claimant was accepted as permanently and totally disabled as of May 4, 1992. The parties stipulated to an average weekly wage of $433.70, with a corresponding compensation rate of $289.13.
On April 7, 1998, the employer began taking offsets for disability retirement and social security disability benefits (including cost-of-living increases) retroactive to January 1, 1994. The claimant disagreed with the employer's calculation of the offset, and filed a petition seeking a determination of the proper offset.
The judge of compensation claims held that the employer was entitled to offset only the amounts of the initial payments of disability retirement and social security disability benefits, without the inclusion of any cost-of-living increases; and that the employer was not permitted to recalculate the amount of the offset in the future, to take into account subsequent cost-of-living adjustments. She held, further, that the health insurance subsidy could not be offset against the claimant's workers' compensation benefits. This appeal follows.

II.
The employer argues that, pursuant to a correct interpretation of Escambia County Sheriff's Department v. Grice, 692 So.2d 896 (Fla.1997), it is entitled to offset against workers' compensation benefits all collateral benefits being received by the claimant at the time the workers' compensation benefit is payable, including any cost-of-living increases applicable to the collateral benefits. However, it candidly concedes that this court's subsequent decisions in Acker v. City of Clearwater, 755 So.2d 651 (Fla. 1st DCA 1998), review granted, 727 So.2d 903 (Fla.1999), and its progeny, including Alderman v. Florida Plastering, 748 So.2d 1038 (Fla. 1st DCA 1998), review granted, 732 So.2d 326 (Fla. 1999), preclude such an argument. Accordingly, it argues, instead, that the judge of compensation claims should have permitted it to include cost-of-living increases to the collateral benefits which had accrued prior to the date as of which it elected for the first time to take an offset. In fact, it contends that Acker appears to mandate such a result.
We conclude that our decisions in Acker and Alderman support the decision of the judge of compensation claims. In Acker, we held that an offset could not be recalculated to take into account increases in permanent total disability supplemental benefits. The holding was based upon the proposition that the intended purpose of supplemental benefits is to provide a cost-of-living adjustment to injured workers and, if recalculation of the offset to take such increases into account were permitted, that purpose would be frustrated. 755 So.2d at 653.
In Alderman, we made it clear that the rationale of Acker extended to cost-of-living increases to collateral benefits:
One recalculation of the offset is allowed as of the date the claimant began receiving disability retirement benefits. Our decision in Hunt [v. Stratton, 677 So.2d 64 (Fla. 1st DCA 1996)] prohibits recalculation of an offset based on any cost-of-living increase in a particular benefit. However, it does not forbid recalculation of an existing offset when a claimant who has been receiving one type of collateral benefit (e.g., social security) later begins receiving yet another type of benefit (e.g., disability retirement). Alderman began receiving social security benefits in 1990. Then in 1992, he began receiving disability retirement benefits in addition to his other benefits. The judge should therefore order recalculation of the offset one time, to account for the addition of the new collateral benefit the claimant began receiving in June of 1992. No further recalculation is allowed for the cost of living [sic] increases.
748 So.2d at 1040. The clear intent of our holding in Alderman is to ensure that *934 injured workers do not suffer an erosion in the value of the benefits they receive by depriving them of the cost-of-living increases believed necessary by government to counter the effect of inflation and, thereby, to maintain that value.
We acknowledge that, in Acker, we permitted the initial permanent total disability supplemental benefit payment to be offset, and that this suggests that the employer here should have been permitted to include at least some collateral benefit cost-of-living increases in its calculation (perhaps at least until the date as of which the claimant was accepted as permanently and totally disabled). Frankly, we do not know the basis for that apparent inconsistency in Acker. Perhaps it was the result of the panel's perception that language in previous decisions suggested (without considering the precise issue raised in Acker) that such a result was required. See, e.g., Hunt v. Stratton, 677 So.2d 64 (Fla. 1st DCA 1996); State, Division of Workers' Compensation v. Hooks, 515 So.2d 294 (Fla. 1st DCA 1987). Perhaps it was simply attributable to the fact that Acker did not challenge the inclusion of the first supplemental benefit payment in the offset calculation. In any event, it seems to us that the rationale behind the decisions in Acker and Alderman clearly dictates the conclusion that we reachthat no post-injury cost-of-living increases to collateral benefits may be offset against workers' compensation benefits. Such a result also seems to be consistent with prior decisions of this court. See Hunter v. South Florida Sod, 666 So.2d 1018 (Fla. 1st DCA 1996) (cost-of-living increases to social security disability benefits accruing after the date of the industrial accident cannot be included in the offset calculation).
We affirm the decision of the judge of compensation claims which limited the offsets for disability retirement and social security disability benefits received by the claimant to the amounts initially received, without any consideration of cost-of-living increases. However, because the employer has asked us to recede from Acker, which we decline to do, we certify to the supreme court the same question that we certified in that case:
WHERE AN EMPLOYER TAKES A WORKERS' COMPENSATION OFFSET UNDER SECTION 440.20(15), FLORIDA STATUTES (1985), AND INITIALLY INCLUDES SUPPLEMENTAL BENEFITS PAID UNDER SECTION 440.15(1)(e)1, FLORIDA STATUTES (1985), IS THE EMPLOYER ENTITLED TO RECALCULATE THE OFFSET BASED ON THE YEARLY 5% INCREASE IN SUPPLEMENTAL BENEFITS?[*]
In addition, we certify the following question, as one of great public importance:
WHEN CALCULATING THE OFFSETS FOR SOCIAL SECURITY DISABILITY AND DISABILITY RETIREMENT BENEFITS PURSUANT TO ESCAMBIA COUNTY SHERIFF'S DEPARTMENT v. GRICE, 692 So.2d 896 (Fla.1997), IS THE EMPLOYER ENTITLED TO INCLUDE COST-OF-LIVING INCREASES TO THOSE BENEFITS?

III.
The employer contends that the judge of compensation claims erroneously concluded that the $36.27 health insurance subsidy received by the claimant as a state retiree was not a collateral benefit which could be offset against the workers' compensation benefits to which the claimant would otherwise be entitled. Again, we conclude that the decision of the judge of compensation claims was correct.
It is undisputed that the claimant's health insurance subsidy was paid pursuant to section 112.363, Florida Statutes (1991). Pursuant to the formula set out in paragraph (3)(c) of that section, the claimant's subsidy was computed by multiplying *935 the years of creditable state service (12.09) by $3.00. According to subsection (1), "[t]he purpose of th[e] section is to provide a monthly subsidy payment to retired members of any state-administered retirement system in order to assist such retired members in paying the costs of health insurance." The statute provides, further, that the subsidy is intended to be payable to retired state employees generally, and to beneficiaries who are spouses or financial dependents entitled to receive benefits under any state-administered retirement system. § 112.363(2), Fla. Stat. (1991).
Claimant became eligible to receive the health insurance subsidy because of his eligibility for state disability retirement. However, it is apparent that the purpose of the subsidy is to assist state retirees, regardless of disability, in paying health insurance premiums. It is not intended as a disability benefit. As such, we do not believe that the subsidy constitutes a benefit from a "collateral source," as that term is used in Escambia County Sheriffs Department v. Grice, 692 So.2d 896, 898 (Fla. 1997). See Dixon v. Pasadena Yacht & Country Club, 731 So.2d 141 (Fla. 1st DCA 1999) (social security retirement benefits do not constitute a "collateral source" which may be offset against workers' compensation benefits because they are not disability benefits), review pending, Case No. 95,685 (Fla. filed May 27, 1999). Accordingly, we affirm the decision of the judge of compensation claims declining to permit the retiree health insurance subsidy to be included in the offset calculation.

IV.
For the foregoing reasons, the decision of the judge of compensation claims is affirmed.
AFFIRMED.
BARFIELD, C.J. and BENTON, J., CONCUR.
NOTES
[*] Because the claimant in this case was injured in 1987, the 1987 version of sections 440.20(15) and 440.15(1)(e)1, rather than the 1985 version, applies. However, the two are identical.