755 So.2d 597 (1999)
CITY OF CLEARWATER, Petitioner,
v.
Judi ACKER, Respondent.
City of Clearwater, Petitioner,
v.
Lawrence Hahn, Respondent.
City of Clearwater, Petitioner,
v.
Terrence Rowe, Respondent.
Nos. 93,800, 93,983 and 93,984.
Supreme Court of Florida.
December 9, 1999.
Rehearing Denied April 19, 2000.
H. George Kagan, Ann Marie Vernon, and Elliot B. Kula of Miller, Kagan, Rodriguez & Silver, West Palm Beach, Florida; and Nancy A. Lauten and Mark E. Hungate of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Florida, for Petitioner.
Christopher J. Smith and William H. Yanger, Jr. of Yanger & Yanger, Tampa, Florida; and Richard A. Sicking, Coral Gables, Florida, for Respondent.
Derrick E. Cox of Hurley, Rogner, Miller, Cox & Waranch, P.A., Orlando, Florida, for Brevard County Board of County Commissioners, Amicus Curiae.
Katrina D. Callaway, Senior Attorney and Edward A. Dion, General Counsel, Tallahassee, Florida, for Department of Labor & Employment Security, Amicus Curiae.
David A. McCranie of McCranie & Lower, P.A., Jacksonville, Florida, for Department of Insurance, Division of Risk Management, Amicus Curiae.
Richard Sicking, Coral Gables, Florida, for Clearwater Fire Fighters Association, Inc., Local 1158, International Association of Fire Fighters, AFL-CIO, and Florida Professional Firefighters, Inc., International *598 Association of Fire Fighters, AFL-CIO, Amici Curiae.
Mark L. Zientz of Levine, Busch, Schnepper & Stein, P.A., Miami, Florida, for Florida Workers' Advocates, Amicus Curiae.
QUINCE, J.
We have for review three decisions certifying the following question to be of great public importance:
WHERE AN EMPLOYER TAKES A WORKERS' COMPENSATION OFFSET UNDER SECTION 440.20(15), FLORIDA STATUTES (1985), AND INITIALLY INCLUDES SUPPLEMENTAL BENEFITS PAID UNDER SECTION 440.15(1)(e)1, FLORIDA STATUTES (1985), IS THE EMPLOYER ENTITLED TO RECALCULATE THE OFFSET BASED ON THE YEARLY 5% INCREASE IN SUPPLEMENTAL BENEFITS?
Acker v. City of Clearwater, 755 So.2d 651, 653 (Fla. 1st DCA 1998); Hahn v. City of Clearwater, 755 So.2d 137 (Fla. 1st DCA 1998); Rowe v. City of Clearwater, 755 So.2d 137 (Fla. 1st DCA 1998). We have jurisdiction. See Art. V, § 3(b)(4), Fla. Const. For the reasons stated below, we answer the certified question in the negative.

City of Clearwater v. Judi Acker, Case Number 93,800
In 1986, Ms. Acker was injured in the scope of her employment. Initially, the City of Clearwater (the City) denied her workers' compensation benefits. From 1986 until 1994, Ms. Acker only received an in-line-of-duty disability pension. In 1994, she was awarded retroactive workers' compensation consisting of two lump sum payments in excess of $150,000. Thereafter, she received workers' compensation permanent total disability benefits (workers' compensation benefits) and workers' compensation permanent total supplemental disability benefits (supplemental benefits) in addition to her in-line-of-duty disability pension benefits (pension benefits).
Because Ms. Acker was receiving more than 100 percent of her average weekly wage (AWW),[1] her pension benefits were offset so that her actual compensation would not exceed 100 percent of her previous AWW. See § 440.20(15), Fla. Stat. (1985). The offset was initially calculated by adding together all the benefits she was entitled to receive, including workers' compensation benefits, pension benefits and supplemental benefits, which had accrued as of that date, then subtracting her previous AWW. Each year, pursuant to the supplemental benefits statute, Ms. Acker was attributed a five percent cost-of-living increase. See § 440.15(1)(e)1, Fla. Stat. (1985). However, because her total benefits already exceeded her AWW, she never actually received any of the increases. The five percent increases rolled over into the offset.
Ms. Acker conceded it was proper to include supplemental benefits in the initial offset calculation; however, she asserted it was improper for the City to recalculate the offset annually to include subsequent increases in supplemental benefits. She argued the purpose of increases in supplemental benefits was to provide permanently and totally disabled workers with cost-of-living increases, and that including increases in supplemental benefits in the pension offset defeated the Legislature's purpose for enacting the supplemental *599 benefits statute. The judge of compensation claims (JCC) was sympathetic to the argument, but held it was proper for the pension offset to be recalculated annually to include increases in supplemental benefits. The JCC relied on City of North Bay Village v. Cook, 617 So.2d 753 (Fla. 1st DCA 1993), and Escambia County Sheriffs Department v. Grice, 692 So.2d 896 (Fla.1997). The First District reversed the JCC's decision, holding annual increases in supplemental benefits should not be used to calculate offsets. See Acker v. City of Clearwater, 755 So.2d 651 (Fla. 1st DCA 1998). The district court adopted Ms. Acker's argument that recalculating the offset to encompass increases in supplemental benefits would frustrate the legislative purpose of providing cost-of-living increases to permanently and totally disabled workers. See id. The district court acknowledged its decision that not to include the increases in supplemental benefits in the pension offset appeared to conflict with the figures this Court used to calculate the offset in Grice, 692 So.2d at 896; however, it dismissed the apparent conflict, opining that this Court failed to squarely address the supplemental benefits issue in that case. See Acker v. City of Clearwater, 755 So.2d 651 (Fla. 1st DCA 1998).
For the reasons expressed below we answer the certified question in the negative and approve the First District's decision in Acker. See id.
The supplemental benefits statute, which was enacted by the Legislature during its 1974 session and became effective on October 1, 1974,[2] provides:
[T]he injured employee shall receive additional weekly compensation benefits equal to 5 percent of his weekly compensation rate, as established pursuant to the law in effect on the date of his injury, multiplied by the number of calendar years since the date of injury. The weekly compensation payable and additional benefits payable pursuant to this paragraph, when combined, shall not exceed the maximum weekly compensation rate in effect at the time of payment as determined pursuant to s. 440.12(2).
§ 440.15(1)(e)(1), Fla. Stat. (1985).
The City now claims increases in supplemental benefits are compensation and should be included in offset calculations under section 440.20(15), which provides:
When an employee is injured and the employer pays his full wages or any part thereof during the period of disability, or pays medical expenses for such employee, and the case is contested by the carrier or the carrier and employer and thereafter the carrier, either voluntarily or pursuant to an award, makes a payment of compensation or medical benefits, the employer shall be entitled to reimbursement to the extent of the compensation paid or awarded, plus medical benefits, if any, out of the first proceeds paid by the carrier in compliance with such voluntary payment or award, provided the employer furnishes satisfactory proof to the judge of compensation claims of such payment of compensation and medical benefits. Any payment by the employer over and above compensation paid or awarded and medical benefits, pursuant to subsection (14), shall be considered a gratuity.
§ 440.20(15), Fla. Stat. (1985). Section 440.20(15) has been interpreted to mean *600 that an injured worker's compensation from all sources cannot exceed 100 percent of his individual AWW at the time of the injury. See Barragan v. City of Miami, 545 So.2d 252 (Fla.1989).
It is undisputed that the Legislature intended supplemental benefits to provide cost-of-living increases for permanently and totally disabled workers to account for the impact of inflation. See Department of Labor & Employment Sec. v. Vaughan, 411 So.2d 294, 295 (Fla. 1st DCA 1982)(stating purpose of five percent increase is to "partially offset the effects of inflation"). In Shipp v. State Workers' Compensation Trust Fund, 481 So.2d 76 (Fla. 1st DCA 1986), the First District elaborated on the Legislature's purpose for enacting the statute stating:
Claimant's argument[[3]] is inconsistent with the purpose of supplemental benefits, which is to protect recipients of periodic benefits from the long-term effects of inflation that reduce the value of a fixed amount of benefits. The effects of inflation are the same irrespective of the method of calculating supplemental benefits. Once a lump-sum payment is authorized and received pursuant to section 440.20, a claimant has the option to invest the funds and offset the effects of inflation so that the purpose of supplemental benefits is satisfied.
Id. at 79 (emphasis added).
Clearly, the stated purpose for the enactment of section 440.15(1)(e)1, as a hedge against inflation, would be frustrated under the City's interpretation of section 440.20(15).[4] Thus, there is an apparent conflict between the purpose of the supplemental benefits statute and the City's argument that section 440.20(15) requires increases in supplemental benefits to be included in offset calculations. "Where ... two statutes are found to be in conflict, rules of statutory construction must be applied to reconcile ... the conflict. We are aided in this task by the maxim that `legislative intent is the pole star by which we must be guided in interpreting the provisions of a law.'" DeBolt v. Department of Health & Rehabilitative Servs., 427 So.2d 221, 224 (Fla. 1st DCA 1983)(quoting Parker v. State, 406 So.2d 1089, 1092 (Fla.1981)).
Accordingly, to read the supplemental benefits statute and the 100 percent cap statute harmoniously, this Court must assume the Legislature did not intend offsets to be annually recalculated to account for cost-of-living increases in supplemental benefits. To hold otherwise would prevent injured workers from receiving cost-of-living increases and would render the supplemental benefits statute virtually meaningless.[5]
Additional support for this interpretation is found by looking at the statutes from a historical perspective. When the supplemental benefits statute was enacted there was only one limiting cap on injured workers' benefits, the statewide AWW. The statewide AWW was set by the Division of Workers' Compensation and was increased annually to account for inflation. Therefore, the supplemental benefits statute *601 capped the injured workers' total combined workers' compensation and supplemental benefits at the statewide AWW. This allowed injured workers to receive cost-of-living allowances.
At the time the supplemental benefits statute was enacted, the Legislature obviously contemplated workers would receive in excess of 100 percent of their individual AWW from cost-of-living increases. The supplemental benefits statute was enacted in 1974 but was applied retroactively to all workers who had been injured after 1959. Accordingly, if a worker had been injured in 1959, and had an AWW of $70,[6] the worker would receive $42 in workers' compensation benefits and $31.50 in supplemental benefits. The combined workers' compensation and supplemental benefits payable to such person in 1974 would be $73.50. That is $3.50 more than the worker's AWW at the time of the accident. Thus, at the time the supplemental benefits statute was enacted, the Legislature could not have intended combined benefits to be limited to 100 percent of the worker's AWW at the time of the accident.
The City contends that the Legislature's subsequent enactment of section 440.20(15) expressed the Legislature's desire that increases in supplemental benefits be included in offset calculations because the Legislature did not state that increases in supplemental benefits should be excluded. We disagree. To adopt such a literal interpretation ignores the historical development of section 440.20(15).
In 1979, the Legislature enacted section 440.20(15). The plain language of section 440.20(15) does not state that injured workers may not receive in excess of 100 percent of their individual AWW. Instead, it states that employers who paid injured workers their benefits prior to a carrier's voluntary assumption or determination of liability will only be reimbursed up to 100 percent of the injured worker's individual AWW. It was not until 1989 that this Court interpreted section 440.20(15) as limiting an injured worker's combined benefits from all sources to 100 percent of his or her individual AWW. See Barragan, 545 So.2d at 252.
The City is asking this Court to look at the language of section 440.20(15) and hold supplemental benefits should be included in offset calculations because the Legislature did not specifically state that increases in supplemental benefits should be excluded from the calculations. Had the 100 percent cap come from a strictly literal reading of the statute, this might be in order. However, where the 100 percent cap is a judicial interpretation of an ambiguous statute, and any further expansion of the statute through judicial interpretation would render another statute meaningless, this Court must first try to read the statutes harmoniously. This can be done if this Court assumes the Legislature never contemplated offsets would be annually recalculated to encompass increases in supplemental benefits made after the initial determination of benefits.
This Court's harmonious interpretation of the supplemental benefits statute and the 100 percent cap statute is also supported by the Legislature's subsequent amendment of the supplemental benefits statute. By amending the statute, the Legislature reaffirmed its desire to give permanently and totally disabled workers benefits based upon the current value of the dollar rather than the value of the dollar at the time of the injury.
Originally, there was some ambiguity as to whether the statewide AWW cap contained in the supplemental benefits statute referred to the statewide AWW at the time of the injury or at the time of payment. See id. The statute was amended to state that combined workers' compensation and supplemental benefits should be capped at the statewide AWW at the time of payment. See Polote Corp. v. Meredith, *602 482 So.2d 515, 517 (Fla. 1st DCA 1986). By amending the statute in this way, the Legislature reaffirmed its desire to provide permanently and totally disabled workers with cost-of-living increases based upon the current value of the dollar. It would thwart the very foundation of the supplemental benefits statute if this Court were to now hold that annual increases in supplemental benefits require offsets to be annually recalculated to encompass the increases.
For these reasons, we approve the First District's decision in Acker v. City of Clearwater, 755 So.2d 651 (Fla. 1st DCA 1998). We do not express any opinion as to whether supplemental benefits accruing prior to the date the injured worker is accepted as permanently and totally disabled should be included in the initial offset calculations because that issue is not properly before this Court.

City of Clearwater v. Lawrence Hahn, Case Number 93,983
In 1992, Mr. Hahn was injured in the scope of his employment as a public service technician. In 1994, he was accepted as permanently and totally disabled. Thereafter, he began to receive workers' compensation benefits and supplemental benefits based on his individual AWW. In 1995, in addition to his workers' compensation benefits, Mr. Hahn also began to receive pension benefits from the City.
His pension offset was calculated based on his contract of hire rate rather than his AWW.[7] The offset also included workers' compensation benefits and supplemental benefits. The offset was recalculated annually to include cost-of-living increases in supplemental benefits. Mr. Hahn conceded that supplemental benefits that had accrued prior to his being accepted as permanently and totally disabled should be included in the offset; however, he contested including subsequent increases in supplemental benefits and using his contract for hire rate as a basis for calculating the offset.
The JCC held that it was improper to use the contract of hire as the basis for determining the offset[8] but that it was proper to recalculate the offset annually to include increases in supplemental benefits. The First District upheld the JCC's decision on the contract of hire issue but reversed the JCC's decision that the pension offsets should be recalculated annually to include increases in supplemental benefits. The First District cited Acker v. City of Clearwater, 755 So.2d 651 (Fla. 1st DCA 1998), and certified the same question presented in therein. See Hahn v. City of Clearwater, 755 So.2d 137 (Fla. 1st DCA 1998).
For the reasons expressed above we approve the First District's decision in Hahn.

City of Clearwater v. Terrence Rowe, Case Number 93,984
In 1992, Mr. Rowe was injured while working as an air conditioning technician for the City. In 1993, he began to receive pension benefits. In 1994, he was accepted as permanently and totally disabled and began to receive workers' compensation benefits and supplemental benefits.
His initial pension offset was calculated using his individual AWW and included supplemental benefits. The offset was recalculated annually to include increases in supplemental benefits. In 1996, Mr. Rowe began to receive social security disability *603 in addition to his other benefits. Mr. Rowe conceded the City had the right to include supplemental benefits when initially calculating the offset; however, he asserted that the City should not be allowed to increase the offset annually to include increases in supplemental benefits, which were meant to be a cost-of-living increase for permanently and totally disabled workers.
The JCC held it was proper to recalculate the offset annually to include increases in supplemental benefits. The First District reversed the JCC, citing Acker v. City of Clearwater, 755 So.2d 651 (Fla. 1st DCA 1998), and certified the same question presented therein. See Rowe v. City of Clearwater, 755 So.2d 137 (Fla. 1st DCA 1998).
For the reasons expressed above, we approve the First District's decision in Rowe. Nothing in this opinion should be read to change the workers' compensation offset under section 440.15(9), Florida Statutes (1985). That offset provision is different from section 440.20(15), Florida Statutes (1985), because of the federal social security offset provisions.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
NOTES
[1] The district court's opinion refers to the average monthly wage (AMW), presumably in response to the term used in Barragan v. City of Miami, 545 So.2d 252 (Fla.1989). In Barragan, the Court limited a worker's combined benefits from workers' compensation and pension benefits to 100 percent of the worker's AMW, calculated by multiplying the AWW by 4.3. All relevant statutes and most of the other cases addressing this issue refer to the AWW, rather than the AMW; therefore, we have modified this opinion to refer to the AWW for consistency. This change does not affect the substantive analysis.
[2] This statutory provision has remained substantially unchanged since its enactment, except for the clarification that the applicable statewide AWW is the statewide AWW at the time of payment, see Shipp v. State Workers' Compensation Trust Fund, 481 So.2d 76 (Fla. 1st DCA 1986), and the addition of a provision which terminates this benefit when the recipient becomes eligible for social security retirement benefits and social security disability benefits. See Burger King Corp./CIGNA Ins. Co. v. Moreno, 689 So.2d 288 (Fla. 1st DCA 1997).
[3] The claimant in Shipp was arguing he was entitled to supplemental benefits even though he had settled his worker's compensation claim with a lump-sum payment.
[4] Moreover, recipients of periodic payments, especially those who are receiving 100 percent of their individual AWW and who could otherwise qualify for lump-sum payments, would have no incentive to receive monthly payments. See Shipp, 481 So.2d at 79 (stating "lump-sum payments are not a favored remedy"). Indeed, as the First District pointed out in Shipp, a worker's compensation claimant could receive a lump-sum payment, invest it wisely, and realize the five percent increase in benefits denied by offsetting increases in supplemental benefits through annual recalculations.
[5] Moreover, by expressly stating that supplemental benefits should only be limited by the statewide AWW, and not mentioning any other limitations, the Legislature implicitly stated that permanently and totally disabled workers were not otherwise limited in the amount of supplemental benefits they could receive.
[6] In 1959, $70 was the statewide AWW.
[7] The contract for hire may result in a lower base rate for calculating the offset than the AWW because it excludes overtime and the value of health insurance. When an injured worker's contract of hire rate is used as the base rate to calculate the 80% or 100% cap on benefits, the rate will be lower than the AWW where the injured worker had employer provided health insurance or the worker had worked overtime during the thirteen weeks proceeding the accident, which is the period used to calculate the AWW.
[8] As this issue is completely separate from the certified question, the Court does not feel obliged to address it in this opinion.