BENTON, J.
An employer and its insurance carrier appeal a final order requiring payment of “permanent total disability benefits at the rate of $209.47 per week, plus appropriate supplemental benefits” rather than at the reduced rate the appellants began paying when they accepted Desiree Smith as permanently totally disabled and recalculated the “reverse offset” for social security disability benefits they first took against temporary total disability benefits. We affirm.
The final order chronicles pertinent events with clarity and precision on which we are unable to improve:
2. The claimant, Desiree Smith, sustained a compensable industrial injury on February 5, 1998, when she struck her left ankle on a sliding garage door resulting in reflex sympathetic dystrophy ... to the lower extremity.
3. When injured, the claimant’s average weekly wage ... was $523.97, which produced a compensation rate of $349.33.
4. While the claimant was eligible for temporary total disability (TTD) benefits, she was awarded social security disability ... benefits. The employer/carrier reinstated TTD benefits in May, 2001.
5. Beginning August 15, 2001, the employer/carrier began taking a social security offset of $139.59 so that claimant’s compensation rate became $209.74 per week in TTD benefits. There is no dispute to any of these figures or the employer/carrier’s right to take this offset.
6. When the claimant reached maximum medical improvement ... on April 23, 2002, the employer/carrier administratively accepted her as permanently and totally disabled. Because this was four years after her injury, the claimant was entitled to $69.87 in permanent total disability supplemental benefits in addition to her PTD benefits. See, § 440.15(l)(f)l, Fla. Stat. (1997).
7. However, the employer/carrier recalculated their social security offset, including claimant’s supplemental benefits. Beginning January 16, 2002, they in *1083 creased their offset to $209.44 which resulted in payments of $139.87 per week.
In response to the reduced payments, Ms. Smith filed the petition for benefits which eventuated in the final order under review.
“Florida is ... considered, in social security terminology, a ‘reverse offset’ state, since the statutory scheme provides that the workers’ compensation carrier takes the offset.” Burks v. Day’s Harvesting, Inc., 597 So.2d 858, 860 (Fla. 1st DCA 1992). In pertinent part, section 440.15(10)(a), Florida Statutes (1997), provides:
Weekly compensation benefits payable under this chapter for disability resulting from injuries to an employee who becomes eligible for benefits under 42 U.S.C. s. 423 shall be reduced to an amount whereby the sum of such compensation benefits payable ... for such period to the employee and her or his dependents, had such employee not been entitled to benefits under this chapter, under 42 U.S.C. ss. 402 and 423, does not exceed 80 percent of the employee’s average weekly wage.
This language authorizes a “reverse offset” against compensation benefits without regard to whether the benefits are permanent or temporary. At issue in the present case is whether, once such an offset has been taken against temporary benefits, the amount of the offset is subject to recalculation when temporary payments end and permanent benefits begin.
Without “express[ing] any opinion as to whether supplemental benefits accruing prior to the date the injured worker is accepted as permanently and totally disabled should be included in the initial offset calculations,” City of Clearwater v. Acker, 755 So.2d 597, 602 (Fla.1999) (reh’g denied 2000), our supreme court has made it clear that an offset taken against permanent total disability benefits ought not thereafter be increased in a way that “would prevent injured workers from receiving cost-of-living increases-.” Id. at 600. Our own cases have likewise condemned such recalculations, while including supplemental benefits accruing prior to the date the injured worker is accepted as permanently and totally disabled in the initial offset calculations. See Jackson v. Hochadel Roofing Co., 794 So.2d 668, 671 (Fla. 1st DCA 2001); Fla. Power Corp. v. Van Loan, 764 So.2d 708, 710 (Fla. 1st DCA 2000); Conklin v. Ford, 737 So.2d 602, 602-03 (Fla. 1st DCA 1999), approved, 781 So.2d 1070 (Fla.2001); Cruse Constr. v. St. Remy, 704 So.2d 1100, 1101 (Fla. 1st DCA 1997); Hunt v. Stratton, 677 So.2d 64, 67 (Fla. 1st DCA 1996). We have also held more broadly that the “decision in Hunt prohibits recalculation of an offset based on any cost-of-living increase in a particular benefit. However, it does not forbid recalculation of an existing offset when a claimant who has been receiving one type of collateral benefit (e.g., social security) later begins receiving yet another type of benefit (e.g., disability retirement).” Alderman v. Fla. Plastering, 748 So.2d 1038, 1040 (Fla. 1st DCA 1998), approved, 755 So.2d 604 (Fla.2000). Accord State v. Herny, 776 So.2d 932, 932 (Fla. 1st DCA 1999) (limiting “in-line-of-duty disability retirement and social security disability offsets ... to the initial benefit received by the claimant, excluding any cost-of-living increases,” without regard to when the claimant is accepted as permanently, totally disabled), approved, 781 So.2d 1067 (Fla.2001).
Ms. Smith’s contention, that the decisions in Conklin and Hemy already establish that the transition from temporary to permanent benefits is of no significance for purposes of calculating an offset, is problematic. It is impossible to ascertain from the face of the Conklin opinion whether the offset originally taken in that case was set off against temporary benefits. While it is clear from the Hemy opinion that an *1084 offset was originally taken against temporary benefits, the focus of the opinion is the effect of collateral benefits, not supplemental compensation benefits. Even if the question raised in the present case is an open one, however, the prior eases point clearly to our decision today.
We hold that an employer or insurance carrier, having taken offsets against temporary compensation benefits, cannot, upon accepting a claimant as permanently, totally disabled, then recalculate the amount of the offsets to take supplemental benefits into account, and so render accrued supplemental benefits of no practical significance. See Dep’t of Child. & Fams, v. Monroe, 744 So.2d 1163, 1164 (Fla. 1st DCA 1999) (“The purpose of supplemental benefits is to allow for increases in the cost of living.”). The transition from temporary to permanent compensation benefits does not affect the amount of an offset already being taken.
Affirmed.
BOOTH and LEWIS, JJ., concur.